```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   UNITED STATES OF AMERICA,                                :
                                                            :
                  - against –                               :   ORDER
                                                            :
   MARK NORDLICHT,                                          :   16-cr-00640 (BMC)
   DAVID LEVY,                                              :
   DANIEL SMALL,                                            :
   JOSEPH MANN,                                             :
   JOSEPH SANFILIPPO, and                                   :
   JEFFREY SHULSE,                                          :
                                                            :
                  Defendants.                               :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

The parties have filed five motions *in limine* [433, 434, 435, 440, 446] seeking to preclude the introduction of evidence or testimony about eight different topics. The Government also moved to compel [446] defendants to provide the Government with a witness list, an exhibit list identifying the documents defendants will seek to admit during their case-in-chief, and copies of each exhibit. This order assumes familiarity with the facts and the parties' positions.

    **I.**    **The Government's Motion to Preclude Defendant's Purported Belief that PPVA Would Recover is Denied**

The Government moved to preclude defendants from introducing evidence of, cross-examining Government witnesses about, or making arguments about defendants' purported belief that the Platinum Partners Value Arbitrage Fund ("PPVA") would recover from its liquidity crisis. The Government contends that even a good faith belief about PPVA's future performance – including a belief that PPVA would have recovered from its liquidity crisis but for the Government's investigation – would not excuse defendant's alleged fraud.

The Government puts the cart before the horse. Determining whether defendants had a

good faith belief in PPVA's future performance is critical to determining whether defendants committed fraud in the first place. See U.S. v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999) ("Essential to a scheme to defraud is fraudulent intent."). Defendants should be permitted to present to the jury their theory that statements about PPVA were not fraudulent because defendants believed them to be true. Defendants might have been wrong, but that does not amount to securities fraud or any other offense. Any alleged danger of unfair prejudice, confusing the issues, and misleading the jury does not substantially outweigh the probative value of this evidence. The relevant part of the Government's [446] motion is DENIED, although this ruling does not relieve defendants from producing otherwise admissible evidence on this point.

> II. **The Government's Motion to Preclude Defendants from Arguing that the SEC's Examination in 2015 Raises Doubts Regarding these Criminal Charges is Granted**

The Government moved to preclude defendants from arguing that a 2015 SEC examination raises doubts about the merits of the Government's criminal charges in this case.

Defendants intend to show that they cooperated fully and in good faith with the SEC as a means of demonstrating their lack of criminal intent. But defendants do not show how their cooperation with a separate examination has anything to do with the criminal charges that the Government has brought here, and the Court does not see how it could. The alleged cooperation could be fully consistent with a deliberate attempt to mislead, willful blindness, or good faith belief in innocence. Once a potential defendant is contacted by governmental authorities, his response – whatever it is and for whatever reason he makes it – is a calculated decision.

Determining the true motivation for defendants' alleged cooperation would require a mini-trial and a determination by the jury as to whether defendants were posturing or had both a genuine and reasonable belief in their non-culpability. The Government would then be entitled to try to show that the alleged cooperation was not really cooperation but a further attempt at

obfuscation or the continuation of willful blindness.[1] But this case is about whether defendants' acts and omissions were criminal. Any interaction with the SEC over the same acts and omissions, after battle lines were effectively drawn, is substantially outweighed by the dangers of confusing the issues, misleading the jury, and wasting time. It is therefore excluded under Fed. R. Evid. 403.

The relevant part of the Government's motion [446] is GRANTED.

### III. The Government's Motion to Preclude Defendants' Medical Issues or Family Circumstances is Granted in Part and Denied in Part

The Government moved to preclude evidence of defendants' medical issues or family circumstances. In particular, the Government seeks to preclude defendant SanFilippo from introducing evidence of the personal circumstances that led to his absence from Platinum Partners during the time period at issue in this case because it has no probative value and would cause undue sympathy for SanFilippo.

But SanFilippo contends that he should be permitted to introduce evidence that: (1) in 2014, SanFilippo worked from home to help care for his disabled son; (2) one month after he returned to the office in 2014, he became ill and worked from home again; and (3) he later resigned as CFO and took the position of Managing Director of Finance, before regaining the title of CFO in October 2015.

Evidence about SanFilippo's physical absence from the office would allow him to present a more complete perspective on his conduct. It would be unfair to SanFilippo for the jurors to assume that his physical absence from the office is related to alleged misconduct at Platinum

---

[1] In fact, the Government has already moved conditionally – if defendants are permitted to introduce evidence of the 2015 SEC examination – to introduce evidence about subsequent SEC findings in 2017 as well as civil charges it brought in a separate proceeding, SEC v. Platinum Management (NY) LLC, No. 16-cv-6848 (E.D.N.Y. 2016). That motion is denied as moot in light of the ruling above.

Partners. But allowing SanFilippo to introduce evidence about his son's disability or his illness would cause undue sympathy and is not probative of defendants' guilt or innocence. Therefore, SanFilippo may introduce evidence that he was physically absent from office because of personal circumstances unrelated to the alleged misconduct but may not introduce the details of these personal circumstances.

Depending on how the issue develops at trial, however, the Court may require the Government to stipulate that SanFillippo had a good faith reason for his absence if the limitations on the testimony leave doubt as to why he was not there. If the Government does not so stipulate, the Court may permit SanFillippo to testify on the reasons for his absence more expansively.

The only other evidence about defendants' family circumstances that the Government has addressed is evidence that defendant Levy was the nephew of one of the founding partners of Platinum Partners. The Government does not dispute that Levy may elicit the fact that his relationship to one of the co-founding partners of Platinum Partners prompted Levy's acceptance of a position at Platinum Partners. But the Government seeks to preclude Levy from introducing evidence of his family circumstances or relationships that appeal to the jury's emotions. Because neither party has identified what that evidence would be, the Court will not rule on whether such evidence is precluded at this time.

The relevant part of Government's motion [446] is GRANTED in part and DENIED in part.

### IV. The Government's Motion to Preclude Certain Expert Testimony is Granted in Part and Denied in Part

The Government moved to preclude certain expert testimony noticed by the defendants. First, the Government claims that defendants provided insufficient disclosures for

4

Stephen A. Lieberman, who defendants identify as an expert on oil and gas assets, and Linda MacDonald, who defendants identify as an expert on Level 3 assets. Defendants' scant disclosures only describe the proposed experts' backgrounds and identify potential topics for testimony without any serious attempt to fulfill their disclosure obligations under Federal Rule of Criminal Procedure 16. Defendants attempt to excuse their failure to provide adequate disclosures by describing the proposed testimony as "background information" rather than opinion testimony. But Rule 16 does not exempt defendants from their disclosure obligations for expert witnesses who testify about "background information." Defendants must provide updated disclosures within two weeks of the entry of this order or the testimony of their proposed experts will be precluded.

Second, the Government seeks to preclude Lieberman as an inappropriate "hybrid" witness because he would testify both as an expert on oil and gas assets and as a fact witness in light of his role as an engineer involved in a Platinum Partners oil investment. The Government argues that Lieberman's status as an expert provides unwarranted credibility to his non-expert testimony and inhibits cross-examination. But the Government's concerns apply to any witness who serves a dual role as a fact and expert witness. As the Government acknowledges, such "hybrid" witnesses are not categorically precluded, and there is no reason to believe that Lieberman's testimony is separable apart from his dual role as a fact and expert witness.

The relevant part of the Government's motion [446] is GRANTED in part and DENIED in part.

> **V. The Government's Motion to Compel Defendants to Provide the Government with a Witness List, an Exhibit List identifying the Documents Defendants Will Seek to Admit During Their Case-in-Chief, and Copies of Each Exhibit is Granted in Part and Denied in Part**

The Government also moved to compel defendants to provide the Government with a

5

witness list, an exhibit list identifying the documents defendants will seek to admit during their case-in-chief, and copies of each exhibit.[2]

Rule 16 requires defendants to provide to the Government the documents "the defendant intends to use . . . in the defendant's case-in-chief at trial." This rule "imposes reciprocal discovery obligations on defendants." U.S. v. Smith, 985 F. Supp. 2d 506, 522 (S.D.N.Y. 2013).

According to the Government, defendants have not identified any documents that they plan on using during their case-in-chief. Because of the complex nature of this case, it is particularly important that defendants fulfill their reciprocal discovery obligations. Therefore, defendants shall provide copies of the documents they intend to use during their case-in-chief on January 21, 2019 – the same day the Government is required to produce the documents it intends to use during its case-in-chief.

A "case-in-chief" is "[t]he part of a trial in which a party presents evidence to support its claim or defense." United States v. Hsia, No. 98-cr-0057, 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000). As relevant to this motion, defendants' case-in-chief includes not only any affirmative case they will put on following the Government's case-in-chief, but also their cross-examination of government witnesses, because cross-examination "and the evidence introduced during that cross-examination, certainly may be used to support her defense." Id. "To hold otherwise, would effectively render Rule 16(b)(1)(A) a nullity unless a defendant asserted an affirmative defense or planned to put on his or her case after the government rested." U.S. v. Swenson, 298 F.R.D. 474, 477 (D. Idaho 2014). As the Government acknowledges, however, defendant's case-in-chief does not include exhibits defendants intend to use solely to impeach a Government witness rather than advance their theory of the case.

---

[2] The Government initially requested these disclosures by December 12, 2018 but revised this date in its reply papers.

6

But to the extent the documents are already known to be in the Government's possession (for example, if the Government produced the documents), it would be unduly burdensome to require defendants to provide copies of the documents to the Government; defendants may identify these documents by providing the Bates stamp or other unambiguous identifying information without providing a copy of the exhibit.

Further, the parties agree that defendants should provide an exhibit list but disagree about when defendants have to provide it. Defendants contend that their exhibit list is due on February 15, 2019, which is 60 days before the start of the defense case if the Government has an eight-week case-in-chief that begins on February 19, 2019. Defendants cite the Court's previous order at a status conference providing that both the Government and the defendants are required to produce their exhibit list 60 days prior to the start of their affirmative case.

But the Government correctly notes that the Court revised the production schedule and ordered the Government to produce its exhibit list and 18 U.S.C. § 3500 material 75 days before trial. The Government also revised the estimated length of its case-in-chief from eight weeks to six weeks (that is, until April 2, 2019). In light of this revised timeline, and in the interest of maintaining reciprocal obligations between the parties, defendants are to provide the Government with their exhibit list on January 17, 2019, which is 75 days before the defense puts on their affirmative case, if any.

The parties also agree that defendants should provide a witness list but disagree about when they have to provide it. The Government claims that defendants' witness list should be due 30 days before trial, but defendants claim it should be due 30 days before the start of their affirmative case. Given the complexity of the case, it is particularly important that the Government have the witness list sufficiently in advance of trial to allow time to prepare its own

7

case-in-chief and to prepare to cross-examine defendants' witnesses. Therefore, defendants' witness list is due on January 21, 2019 – the same day the Government's witness list is due.[3] This deadline is fair since the Government turned over its exhibit list and section 3500 materials for witnesses on October 24, 2018 – almost four months before trial.

Finally, in the Government's reply to defendants' opposition to this motion, the Government also requested that the Court order defendants to disclose by December 19, 2018 whether defendants intend to assert an advice-of-counsel defense at trial, which defendants will assert it, the counts of the Indictment to which it relates, the attorneys who provided the purported advice, and the documents on which the defendants will rely in advancing the defense. Because this request was not in the Government's initial moving papers – which merely reserved the right to file additional motions *in limine* about an advice-of-counsel defense – defendants have not had an opportunity to respond to this request. Therefore, the Court declines to rule on this request at this time. But defendants are cautioned that, if they intend to raise an advice-of-counsel defense during trial, they must provide adequate notice to the Government, which includes identifying, waiving privilege over, and providing any underlying documents.[4]

The relevant part of the Government's [446] motion is GRANTED in part and DENIED in part.

---

[3] This date is 29 days before trial rather than 30 days because 30 days before trial is Sunday, January 20, 2019.

[4] The Court understands that the advice-of-counsel defense, although often playing a crucial role in a defendant's strategy, has the potential to cause unfair prejudice to the Government. Because it is used to show the defendant's state of mind, a defendant may be able to testify to his version of what he was told by his attorney. This can be particularly difficult for the Government to cross-examine, both because it may not have access to the attorney or to documents expressing the alleged advice, and because it is far from unheard of for a defendant to have limited the basis for the advice when he sought it, or to characterize what his attorney tells him according to what the defendant wanted to hear. That is why the Court is giving defendants notice that they will not be able to rely on this defense without proper discovery and opportunity for the Government to respond to it, including documents referencing the advice that were exchanged between attorney and client.

## VI. Defendant SanFilippo's Motion to Preclude Preferential Redemptions is Denied

Defendant SanFilippo, joined by defendants Nordlicht and Levy, moved to preclude evidence of alleged preferential redemptions (that is, Platinum's alleged decision to pay some investors ahead of others). He argues that the alleged preferential redemptions are irrelevant in light of cautionary language in the Platinum Partners documents that address these redemptions.

SanFilippo then argues that evidence of these alleged preferential redemptions is unduly prejudicial, but he does not identify any specific prejudice that is associated with it and no prejudice is apparent.

SanFilippo's motion [433] is, therefore, DENIED. But defendants are free to counter this evidence with evidence that these preferential redemptions were consistent with the cautionary language in Platinum Partners documents or a good faith motive.

## VII. Defendant Nordlicht's Motion to Preclude the Black Elk Deaths, Injuries, and Oil Spill is Granted in Part and Denied in Part

Defendant Nordlicht moves to preclude the deaths, injuries, and an oil spill that resulted from an explosion at a Black Elk oil platform. The Government intends to introduce this evidence but does not seek to elicit graphic details about the incident, admit photographic evidence, or argue that defendants were responsible for the explosion or the oil spill. Nordlicht acknowledges that the explosion and the related decrease in production are relevant but claims that the human and environmental consequences of the explosion are irrelevant to the charged offenses and highly prejudicial.

The human and environmental consequences of the explosion are probative of the magnitude of the explosion and its consequences for Black Elk's financial condition. The Government may introduce evidence that shows the scope of the impact of the explosion,

9

provided the Government does not elicit graphic details about the incident. Nordlicht's motion [434] is GRANTED in part and DENIED in part.

### VIII. Defendant Nordlicht's Motion to Preclude his Trip to Israel is Granted

Defendant Nordlicht moves to preclude so-called "flight" evidence concerning his trip to Israel approximately one year before the Government filed the indictment in this case.

Any description of Nordlicht's conduct as "flight" is a mischaracterization because there is no connection between Nordlicht's trip to Israel and an indictment that was filed approximately one year later. See United States v. Al-Sadawi, 432 F.3d 419, 424 (2d Cir. 2005) ("[Flight's] probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn [including an inference] from the defendant's behavior to flight[.]").

As Nordlicht has explained, he travels frequently to Israel, and none of his trips are probative of his guilt or innocence of the charges in this case. Introduction of evidence of his trips would merely waste time and confuse the issues. Nordlicht's motion [435] to preclude evidence of his trip to Israel is GRANTED.

### IX. Defendants' Motion to Preclude Purported Investor Losses is Granted

Defendants move to exclude evidence of the alleged $1 billion in investors losses for three persuasive reasons. First, they contend that this evidence is irrelevant, since none of the charges require a showing of any particular amount of loss. Second, defendants note that evidence of purported investor losses is speculative because Platinum Partners' funds have not been completely wound down. Third, they argue that the Government cannot prove that defendants are the primary cause of the alleged losses because the post-indictment imposition of a Receiver and various liquidators over several Platinum entities eliminated defendants' control over the outcome of the investments.

10

In its opposition, the Government claims that these purported losses are relevant to defendants' intent to defraud investors and of the materiality of defendants' alleged misstatements and omissions. But any relevance of the purported investor losses – which is minimal because the Government is not required to show any particular loss – is substantially outweighed by the undue prejudice that defendants would face from its introduction, wasting time, misleading the jury, and confusing the issues.

The Government also contends that the Receiver and liquidators are irrelevant to the charged crimes, which turn on defendants' intent. But that is precisely why evidence of the purported investor losses should be precluded: to the extent these losses were caused, at least in part, by the involvement of the Receiver and liquidators, they are irrelevant to defendants' intent. And the Government has pointed to no way to separate losses allegedly attributable to defendants from those allegedly attributable to the Receiver and liquidators.

Defendants' [440] motion is GRANTED.[5]

**SO ORDERED.**

                                                               U.S.D.J.

Dated: Brooklyn, New York
        January 8, 2019

---

[5] This ruling moots the Government's argument that introducing evidence of the Receiver's and the liquidators' strategies for winding down assets has no probative value and bears a high risk of undue delay, waste of time, and juror confusion, because it would create a mini-trial relating to the liquidation process.